# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### TAMPA DIVISION

**UNITED STATES OF AMERICA**

**v.**                                        **Case No. 8:24-cr-269-MSS-UAM**

**RICHARD GLENN KANTWILL**

_____/

### Memorandum in Support of Pretrial Release

**Now Comes** Defendant, by and through undersigned counsel, and files this memorandum in support of his pretrial release.

### Background

Dr. Richard Kantwill is a 60-year-old dentist and grandfather from Tampa, Florida. He served in the United States Army as a captain in the first war in Iraq. From this experience he developed depression and post-traumatic stress disorder. He has also struggled with alcoholism. Despite this, he has lived six decades without committing any crimes: he has no criminal history at all. He lives with his wife, Maria. They have three adult children, two of whom live nearby, and a third serving in the Air Force. They have two grandchildren. Maria and Richard live in a home they purchased recently and in which they own about $30,000 in equity. Maria told Pretrial Services she would be willing to post their home as collateral with this Court. Dr. Kantwill practices dentistry in Zephyrhills, Florida.

The indictment charges Dr. Kantwill with three violations of transmitting a threat in interstate commerce, in violation of 18 U.S.C. § 875(c). The Pretrial Services Office recommended release, but the Government moved for detention. The Government proffered that Dr. Kantwill made online threats to various political commentators located throughout the country. The Government proffered no evidence whatsoever – and there is none – that Dr. Kantwill has even the slightest inclination to act on any of these threats. Indeed, against the advice of counsel, Dr. Kantwill spontaneously told the Court during the detention hearing that his statements were "empty threats." The Government presented no evidence that would suggest Dr. Kantwill is a flight risk, and there is none. The Court ordered Dr. Kantwill detained on dangerousness grounds, but continued the detention hearing and ordered this briefing.

ARGUMENT

The Court may not consider whether Dr. Kantwill is a danger to anyone's safety because he was not charged with an offense that permits preventative detention: § 875(c) does not establish a "crime of violence." And, in the alternative, assuming the Court was authorized to consider danger to safety, the Government failed to show by clear and convincing evidence that conditions of release will not reasonably assure others' safety.

## I. The Court was not permitted to consider danger to safety.

The Court may hold a detention hearing to consider whether a defendant is a danger to the safety of others only in statutorily enumerated circumstances. Only one of these circumstances is even arguably present here: that the instant offense is a "crime of violence." But Dr. Kantwill is charged with violations of 18 U.S.C. § 875(c), and a violation of § 875(c) is not a "crime of violence" under the "categorical approach" mandated for these inquiries. So, Dr. Kantwill is not charged with a "crime of violence," and, there being no other ground for holding a detention hearing, the Court may not detain Dr. Kantwill.

### A. The Court may detain a defendant because of his danger to the safety of others only in the circumstances listed in 18 U.S.C. § 3142(f)(1).

The Bail Reform Act permits detention only "after a hearing pursuant to the provisions of subsection (f) . . . ." 18 U.S.C. § 3142(e)(1). Subsection (f), in turn, permits the court to hold a hearing in two sets of circumstances. Under subsection (f)(1), the Court may hold a detention hearing "upon motion of the attorney for the Government" if the case involves enumerated types of offenses. *Id*. § 3142(f)(1). A court may hold a hearing under this provision "in a case that involves" "a crime of violence"; a violation of section 1591; a terrorism offense carrying a maximum sentence of 10 years' imprisonment; an offense for which the maximum sentence is life imprisonment or death; a drug offense carrying a maximum sentence of ten

years' imprisonment or more; a felony where the defendant has certain prior convictions; a felony that involves a minor victim; a felony that involves the possession or use of a firearm, destructive device, or other dangerous weapon; or the failure to register of a sex offender. *Id*. § 3142(f)(1)(A)-(E). Under subsection (f)(2), the court may hold a detention hearing if the case involves "a serious risk that [the defendant] will flee" or "a serious risk that [the] defendant will obstruct or attempt to obstruct justice, or threaten, injure, or intimidate, or attempt to threaten, injure, or intimidate, a prospective witness or juror." *Id*. § 3142(f)(2). But the Government has not relied on a risk of flight or obstruction in this case, only a purported danger to the safety of others.

The Supreme Court has interpreted these provisions to limit the circumstances under which the court may detain the defendant as a danger to safety. *See United States v. Salerno*, 481 U.S. 739, 747 (1987). In *Salerno*, considering a challenge to the constitutionality of the Bail Reform Act's preventative detention scheme, the Court wrote, "The Bail Reform Act carefully limits the circumstances under which detention may be sought to the most serious of crimes. *See* 18 U.S.C. § 3142(f) (detention hearings available if case involves crimes of violence, offenses for which the sentence is life imprisonment or death, serious drug offenses, or certain repeat offenders)." *Id*.

4

Given the statute's text and structure, and *Salerno*'s limiting interpretation of it, every court of appeals and the majority of district courts to have considered the issue has held that a court may not hold a detention hearing solely on the basis of a defendant's danger to safety unless the case involves one of the offenses enumerated in subsection (f)(1). *See United States v. Himler*, 797 F.2d 156, 160 (3d Cir. 1986); *United States v. Ploof*, 851 F.2d 7, 11 (1st Cir. 1988); *United States v. Twine*, 344 F.3d 987, 987 (9th Cir. 2003); *United States v. Singleton*, 182 F.3d 7, 99 (D.C. Cir. 1999); *United States v. Byrd*, 969 F.2d 106, 109-10 (5th Cir. 1992); *United States v. Friedman*, 837 F.2d 48, 49 (2d Cir. 1988); *United States v. Holmes* 438 F. Supp. 2d 1340, 1344 (S.D. Fla. 2005); *United States v. Giordano*, 370 F. Supp. 2d 1256, 1260 (S.D. Fla. 2005); *United States v. DeBeir*, 16 F. Supp. 2d 592, 593 (D. Md. 1998); *United States v. Allen*, 409 F. Supp. 2d 622, 625 (D. Md. 2006). As the Fifth Circuit explained, this plain language leads straightforwardly to a limiting interpretation:

> A hearing can be held only if one of the six circumstances listed in (f)(1) and (2) is present; detention can be ordered only after a hearing is held pursuant to § 3142(f). Detention can be ordered, therefore, only "in a case that involves" one of the six circumstances listed in (f), and in which the judicial officer finds, after a hearing, that no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of any other person and the community.

*Byrd*, 969 F.2d at 109.

The holdings of cases like *Himler*, *Ploof*, *Byrd*, *Friedman*, and *Singleton* have only been strengthened since the cases were decided by the Bail Reform Act's amendment history. *See Giordano*, 370 F. Supp. 2d at 1261 n.3. In *Byrd*, a child pornography case, the court wrote, "What may be surprising is the conclusion that even after a hearing, detention can be ordered only in certain designated and limited circumstances, irrespective of whether the defendant's release may jeopardize public safety." *Byrd*, 969 F.2d at 109-10. The court continued, "There is no doubt that the Act places a risk on society: a defendant who clearly may pose a danger to society cannot be detained on that basis alone. In such instances, the Act requires that society's interest be safeguarded only by a set of conditions imposed on his release." *Id*. at 110.

Congress responded to narrow the risk the Act places on society by adding to the list of qualifying offenses in subsection (f)(1). In the Adam Walsh Child Protection and Safety Act of 2006, Pub. L. 109-248, § 216, 120 Stat. 587, Congress added to subsection (f)(1) what now appears as subparagraph (E), permitting a detention hearing in cases involving minor victims, dangerous weapons, or the failure to register of a sex offender. What Congress did *not* do, however, is upset the general holdings of cases from *Himler* to *Singleton* that detention to prevent danger to safety is only authorized in cases enumerated in subsection (f)(1); Congress only modified the list of eligible cases. This demonstrates that Congress, which is

presumed to know the relevant caselaw, chose not to change the prevailing interpretation. *Giordano*, 370 F. Supp. 2d at 1261 n.3 (citing *Conroy v. Aniskoff*, 507 U.S. 511, 516 & n.10 (1993); *Chisom v. Roemer*, 501 U.S. 380, 396 (1991)).

It is at best questionable under *Salerno* whether Congress *could* constitutionally extend preventative detention for dangerousness to all cases – yet another reason bolstering the prevailing interpretation of the Bail Reform Act. In *Salerno*, one reason cited by the Court for upholding the constitutionality of the Bail Reform Act against a Due Process challenge was the limited class of cases in which preventative detention is authorized. *See Salerno*, 481 U.S. at 747. If this Court were to interpret the Act inconsistent with this understanding in *Salerno*, a grave constitutional question as to whether Congress may constitutionally provide for preventative detention in all cases would arise. That the question would even be presented is a reason to interpret the Bail Reform Act consistently with *Salerno*. *See Jennings v. Rodriguez*, 583 U.S. 281, 296 (2018) (citations omitted) (describing the canon of constitutional avoidance). Accordingly, a court may order a defendant's detention on the basis of his danger to safety only in the circumstances enumerated in § 3142(f)(1).

B. <u>Section 875(c) does not create a "crime of violence."</u>

To be sure, one of the circumstances under which a court may detain a defendant as a danger to the safety of others is when he is charged with "a crime of

7

violence." 18 U.S.C. § 3142(f)(1)(A). But Dr. Kantwill is charged only with violating § 875(c), and a violation of § 875(c) is not a "crime of violence."

Under the Bail Reform Act,

the term "crime of violence" means—

(A) an offense that has as an element of the offense the use, attempted use, or threatened use of physical force against the person or property of another;

(B) any other offense that is a felony and that, by its nature, involves a substantial risk that physical force against the person or property of another may be used in the course of committing the offense; or

(C) any felony under chapter 77, 109A, 110, or 117 . . . .

18 U.S.C. § 3156(a)(4). Subparagraph (B), the "residual clause," is unconstitutionally vague. *See Sessions v. Dimaya*, 584 U.S. 148, 152, 156-57 (2018) (plurality opinion) (holding a nearly identical residual clause unconstitutional, and stating that the vagueness doctrine applies to criminal statutes and civil statutes with serious consequences); *id.* at 188 (Gorsuch, J., concurring in part and in the judgment) (agreeing that the residual clause is unconstitutional and opining that the vagueness doctrine applies to all statutes, civil or criminal). And § 875(c) is located in Chapter 41 of Title 18, not any of the chapters listed in § 3156(a)(4)(C). So this issue turns on § 3156(a)(1)(A), the "elements clause." *See Welch v. United States*, 578 U.S. 120, 123 (2016). Under the elements clause, "[t]he adjective 'physical' is clear

in meaning . . . . It plainly refers to force exerted by and through concrete bodies –

distinguishing physical force from, for example, intellectual force or emotional

force." *Johnson v. United States*, 559 U.S. 133, 138 (2010).

To determine whether an offense is a "crime of violence" under § 3156(a)(1),

courts employ the "categorical approach." *See United States v. Johnson*, 399 F.3d

1297, 1301-02 (11th Cir. 2005), *abrogated on other grounds by Dimaya*, 584 U.S. at 152.

Under the categorical approach, courts ask "whether a [statute] necessarily requires

the use or threatened use of physical force, looking only at the required elements of

the defendant's [instant offense], and not to the particular facts underlying those

convictions." *See United States v. Jones*, 906 F.3d 1325, 1328 (11th Cir. 2018).  To do

so, courts "presume that the conviction rested upon nothing more than the least of

the acts criminalized" by the statute.  *Moncrieffe v. Holder*, 569 U.S. 184, 190-91

(2013).  That is, courts consider only the "least culpable conduct" proscribed by the

statute.  *See Donawa v. U.S. Att'y Gen.*, 735 F.3d 1275, 1283 (11th Cir. 2013) (citing

*Moncrieffe*, 569 U.S. at 192).

Applying the categorical approach, courts "focus solely on whether the

elements of the crime . . . sufficiently match" the elements clause, "while ignoring

the particular facts of the case." *Mathis v. United States*, 579 U.S. 500, 504 (2016)

(considering ACCA).  "Distinguishing between elements and facts is therefore

central to" the categorical approach.  *See id*.

9

> "Elements" are the "constituent parts" of a crime's legal definition – the things the "prosecution must prove to sustain a conviction." Black's Law Dictionary 634 (10th ed. 2014). At a trial, they are what the jury must find beyond a reasonable doubt to convict the defendant, and at a plea hearing they are what the defendant necessarily admits when he pleads guilty. Facts, by contrast, are mere real-world things – extraneous to the crime's legal requirements. (We have sometimes called them "brute facts" when distinguishing them from elements.) They are "circumstance[s]" or "event[s]" having no "legal effect [or] consequence": In particular, they need neither be found by a jury nor admitted by a defendant.

*Id.* (citations omitted). The categorical approach "cares not a whit about" the underlying facts; a crime counts as a "crime of violence" "if its *elements* are the same as, or narrower than," the elements clause, "even if the defendant's actual conduct (*i.e.*, the facts of the crime) fit within" the clause's definition. *See id.*; *accord Johnson*, 399 F.3d at 1301-02 (interpreting § 3156(a)(4) and explaining that the issue "is a categorical question, and thus is not dependent upon the specific facts of the case.") (citations omitted).

Under the categorical approach, the interstate threat statute does not describe a "crime of violence." The statute provides, "Whoever transmits in interstate or foreign commerce any communication containing any threat *to kidnap* any person or any threat to injure the person of another, shall be fined under this title or imprisoned not more than five years, or both." 18 U.S.C. § 875(c) (emphasis added). "Kidnap" in § 875(c) refers to the definition of "kidnap" Congress provided in 18 U.S.C.

10

§ 1201.  *United States v. Mobley*, 971 F.3d 1187, 1202-03 (10th Cir. 2020).  Section 1201, in turn, employs a "verb string" to define "kidnap."  *Id*.  A person kidnaps when he "unlawfully seizes, confines, *inveigles*, *decoys*, kidnaps, abducts, or carries away and holds for ransom or reward or otherwise" another person.  18 U.S.C. § 1201(a) (emphasis added).  Thus, § 875(c) prohibits threats to kidnap by inveiglement or decoy.  *See United States v. Gillis*, 938 F.3d 1181, 1206 (11th Cir. 2019).

"Inveigle" means "to persuade (someone to do something by means of deception or flattery" or "to win over by wiles" and "to acquire by ingenuity or flattery."  *Id*. (citations omitted).  "Decoy" means "to lure or entice (a person or animal) away from an intended course, typically into a trap" or "to lure by or as if by a decoy."  *Id*. (citations omitted).  Thus, because the "least culpable conduct" by which kidnapping can be committed is through "intellectual or emotional force," as distinguished from physical force, under the categorical approach, kidnapping does not constitute a crime of violence.  *Id*. at 1210.  It follows *a fortiori* that transmitting a threat to kidnap is not a crime of violence.  The least culpable conduct that could violate § 875(c) is the transmission of a threat to kidnap by inveiglement or decoy, not a threat of physical force.  Section 875(c) does not categorically define a "crime of violence," and so cannot serve as a basis for holding a detention hearing.

To be sure, the indictment in this case alleges that Dr. Kantwill made threats

11

to injure and does not allege that he made threats to kidnap. But the Court may not consult the indictment, because § 875(c) is "indivisible." *See id*. at 1203-04. A statute is "divisible" when it "list[s] elements in the alternative, and thereby defines multiple crimes." *Mathis*, 579 U.S. at 505. In *Mathis*, the Supreme Court provided an example of a divisible statute: a law that prohibits "'the lawful entry or the unlawful entry' of a premises with intent to steal, so as to create two different offenses, one more serious than the other." *Id*. When a statute is divisible like this, courts may use the "modified categorical approach" to determine which offense the defendant is charged with or was convicted of by consulting a limited class of documents, like the indictment. *Id*. So, for example, under the categorical approach a court could consult the indictment to determine whether the defendant is charged with the lesser crime of lawful entry with intent to steal or the greater crime of unlawful entry with intent to steal. *See id*. at 505-06.

However, a statute is "indivisible," disallowing use of the modified categorical approach, when the statute is "not one that lists multiple elements disjunctively, but instead one that enumerates various factual means of committing a single element." *Id*. at 506 (citation omitted). For example, an indivisible statute might "require[] use of a 'deadly weapon' as an element of a crime and further provide[] that the use of a 'knife, gun, bat, or similar weapon' would all qualify." *Id*. (citations omitted). "Because that kind of list merely specifies diverse means of satisfying a single

12

element of a single crime – or otherwise said, spells out various factual ways of committing some component of the offense – a jury need not find (or a defendant admit) any particular item: A jury could convict even if some jurors concluded that the defendant used a knife while others concluded he used a gun, so long as all agreed that the defendant used a 'deadly weapon.'" *Id.* (internal quotations omitted). "And similarly, . . . a statute might . . . itemize the various places that crime could occur as disjunctive factual scenarios rather than separate elements, so that a jury need not make any specific findings (or a defendant admissions) on that score." *Id.* In line with this guidance from the Supreme Court, to take an example familiar to this case, the Eleventh Circuit has held that the kidnapping statute's "verb string" presents alternative means of committing a single element of kidnapping, not alternative elements establishing separate kidnapping crimes, so that the kidnapping statute is "indivisible," prohibiting reliance on the modified categorical approach. *Gillis*, 938 F.3d at 1210.

To determine whether a statutory provision lists alternative elements or illustrative means, courts "consider first the text of the statute, second relevant decisional law, and third other evidence such as indictments and jury instructions." *Id.* at 1204 (citation omitted). "If these sources do not 'speak plainly,' courts must resolve the inquiry in favor of indivisibility." *Cintron v. U.S. Att'y Gen.*, 882 F.3d 1380, 1385 (11th Cir. 2018). In looking at the text of the statute, "[i]f, for example,

13

the statute provides for tiered punishments depending on particular statutory alternatives, the alternatives are elements. Conversely, if the statute is 'drafted to offer "illustrative examples,"' those examples are means of committing the offense, not elements." *Id.* (quoting *Mathis*, 579 U.S. at 517).

Here, the text and structure of § 875 establish that subsection (c)'s alternative terms – a threat to kidnap or injure – are alternative means of satisfying a single threat element. The statute is divided into four lettered subparagraphs, each defining a distinct offense with its own penalty: Subsection (a) punishes demands or requests for a ransom or reward of a kidnapped person, with a penalty of twenty years' imprisonment; subsection (b) punishes threats to kidnap or injure made with intent to extort, with a penalty of twenty years; subsection (c) (at issue here) punishes any threat to kidnap or injure, with a penalty of five years' imprisonment; and subsection (d) punishes threats to injure property or a person's reputation, or to accuse someone of a crime, with intent to extort, with a penalty of two years' imprisonment. *See* 18 U.S.C. § 875. This subdividing of offenses, with tiered penalties, demonstrates that Congress intended to establish four separate offenses within one statute. But it also shows that Congress did not intend to establish multiple offenses *within each subsection*. Subsection (c) establishes a single offense punishable by five years' imprisonment, with a threat element that may be satisfied by two, alternative means, threats to injure or threats to kidnap. This structure shows that Congress did not

14

intend to establish separate alternative elements within the same subsection, so that two crimes are defined, transmitting threats to kidnap and transmitting threats to injure, both punishable by five years' imprisonment.

This understanding of the text of subsection (c) is especially reinforced by comparing that subsection's text against its neighbors'.  It is hard to imagine that, in subsection (a), Congress intended to define two crimes, (1) demands for ransom and (2) demands for reward, both punishable by the same penalty.  Or, more absurd still, that, in subsection (d), Congress intended to define four crimes: (1) threats to injure property, (2) threats to injure the reputation of a live person, (3) threats to injure the reputation of a dead person, and (4) threats to accuse another of a crime.  Instead, subsection (d) sets forth a single offense with one threat element provable by several alternative means.  And comparing subsections (b) and (c) is most illuminating.  The subsections share a common threat element, provable by showing a threat to kidnap or a threat to injure.  The only difference between the two is that subsection (b) requires an intent to extort, and provides for increased punishment with such a showing.  Together, subsection (b) and subsection (c) define two crimes, a greater and a lesser, with a common threat element.  They do not establish *four* crimes, two greater and two lesser, one each for threats to injure and threats to kidnap.

The conclusion that § 875(c) provides alternative means but not elements is buttressed by caselaw.  In *United States v. Martinez*, 736 F.3d 981, 988 (11th Cir.

15

2013), after reproducing the text of § 875(c), the court explained, "The actus reus of the statute is transmitting a threat – that is, a true threat." Then, the court enumerated the elements of a § 875(c) offense: "(1) the defendant transmitted a communication in interstate or foreign commerce, (2) the defendant transmitted that communication knowingly, and (3) the communication would be construed by a reasonable person as a serious expression of an intent to inflict bodily harm or death. *Cf.* [*United States v. Callahan*, 702 F.2d 964, 965 (11th Cir. 1983)]." *Id.* The court's enumeration of the third element contains no explication of the kidnap-injure distinction, indicating that it is single "threat" element provable by two means, threats to kidnap or threats to injure. The case on which *Martinez* relied, *Callahan*, construed a similar and neighboring statute, 18 U.S.C. § 871, which prohibits threats against the president and other officials. *See Callahan*, 702 F.2d at 965. Section 871, similar to § 875(c), prohibits threats to kill, kidnap, or inflict bodily harm on the president. 18 U.S.C. § 871(a). And *Callahan*, like *Martinez*, listed the elements of § 871 and made no mention of these alternative terms, implicitly grouping them together as a single threat element. *See Callahan*, 701 F.2d at 965.

The Supreme Court vacated *Martinez* and remanded for reconsideration in light of its decision in *Elonis v. United States*, 575 U.S. 723 (2015). *Martinez v. United States*, 576 U.S. 1001 (2015). But *Elonis* supports an interpretation of the kidnap-injure terms in § 875(c) as alternative means, as well. There, the Court was asked to

16

decide whether § 875(c) or the First Amendment require that the defendant be aware of the threatening nature of the communication. *Elonis*, 575 U.S. at 726. In its reasoning, the Court said, "This statute requires that a communication be transmitted and that the communication contain a threat. It does not specify that the defendant must have any mental state with respect to these elements." *Id*. at 732. The Court also wrote that § 875(c) "does not indicate whether the defendant must intend that his communication contain a threat." *Id*. The Supreme Court spoke in terms of a single threat element, without mention of alternative threat-to-kidnap and threat-to-injure elements.

The text and structure of § 875(c), along with relevant caselaw, convincingly shows that the threat to kidnap or injure terms are alternative means, not elements. Therefore, the statute is indivisible, and the Court may not use the modified categorical approach look to record documents to determine how the defendant committed the alleged offense. And, as explained above, because under the standard categorical approach the least culpable conduct is the transmission of a threat to kidnap by inveiglement or decoy, an act that involves no threat of physical force, a violation of § 875(c) is not a "crime of violence."

To be sure, for the limited purpose of determining whether a statute is divisible, courts may sometimes "peek" at the indictment, to see if it suggests elements or means. *See Mathis*, 579 U.S. at 518. And the indictment here alleges

17

only that Dr. Kantwill made threats to injure, omitting any reference to § 875(c)'s threat-to-kidnap language. But this "peek" method was authorized in *Mathis* to assist federal judges stumped by difficult state-law questions of whether terms are elements or means – authorized only "if state law fails to provide clear answers . . . ." *Id.* Here, a federal judge must construe federal law, and no resort to tricks like "peeking" at how the Government has chosen to draft this indictment can overcome the forceful way in which the text of the statute and federal caselaw demonstrate that the statute is indivisible. To the extent the Government's own drafting decision creates ambiguity, that ambiguity should be resolved in favor of finding the statute to be indivisible. *See Cintron*, 882 F.3d at 1385.

Section 875(c) is indivisible, requires no threat of physical force, and is not a crime of violence. The Court thus should not have detained Dr. Kantwill as a danger to the safety of others – or held any detention hearing at all.

## II. Even assuming the Court may consider dangerousness, the Government failed to show that no condition or combination of conditions of release could reasonably assure the safety of others by clear and convincing evidence.

Even assuming a detention hearing is authorized, to order detention the Court must find that no "condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of any other person and the community . . . ." 18 U.S.C. § 3142(e). "The facts the judicial officer uses to support a finding pursuant to subsection (e) that no condition or combination of conditions

18

will reasonably assure the safety of any other person and the community shall be supported by clear and convincing evidence." 18 U.S.C. § 3142(f). The Government must show that conditions of release will not "reasonably" assure the defendant's appearance, and it is error to require iron-clad guarantees. *United States v. Orta*, 760 F.2d 887, 891-92 (8th Cir. 1985).

The Government failed to meet its burden here. In considering conditions of release, the court must consider a number of factors, but one predominates in this case: Dr. Kantwill's "history and characteristics," especially his "character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning appearance at court proceedings[.]" 18 U.S.C. § 3142(g)(3)(A). A combat veteran, Dr. Kantwill has no criminal history whatsoever. His wife of many years has pledged their home as collateral, and it is hard to imagine that Dr. Kantwill would risk her homelessness by making online threats while on pretrial release. He would benefit from screening for drug and alcohol treatment, and the Court can order just that. Far from suggesting that Dr. Kantwill would make more online threats if released on conditions, Dr. Kantwill's history and circumstances strongly suggest that he would continue to practice dentistry and avoid any contact with past or current alleged victims.

None of the other § 3142(g) factors outweighs Dr. Kantwill's history and circumstances. In particular, the Government presented no evidence that Dr. Kantwill is a danger to anyone. While the Government proffered that Dr. Kantwill made online threats, it presented nothing to suggest that Dr. Kantwill would ever act on these threats. Dr. Kantwill's history shows that, in 60 years, not only does he have no history of violence, he has no criminal history *at all*. The Government's burden was to show by clear and convincing evidence that no conditions would "reasonably assure" the safety of the community. The Government fell far short of this mark. The Court should therefore order Dr. Kantwill's release.

DATED this 20th day of June 2024.

Respectfully submitted,

A. FITZGERALD HALL, ESQUIRE
FEDERAL DEFENDER

*/s* **Samuel E. Landes**
Samuel E. Landes, Esq.
D.C. Bar No. 1552625
Assistant Federal Defender
400 North Tampa Street, Suite 2700
Tampa, Florida 33602
Telephone: (813) 228-2715
Email: Samuel_Landes@fd.org

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on this 20th of June 2024, a true and correct copy of the foregoing was filed with the Clerk of the Court using the CM/ECF system, which will send a notice of the electronic filing to AUSA Abigail King.

/s *Samuel E. Landes*
Samuel E. Landes, Esq.