UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

UNITED STATES OF AMERICA
v.                                    Case No.8:24-cr-00269-MSS-UAM
RICHARD GLENN KANTWILL    ///

## DEFENDANT'S SENTENCING MEMORANDUM

**COMES NOW**, the Defendant, **RICHARD GLENN KANTWILL**, by and

through his undersigned counsel, pursuant to 18 U.S.C. § 3553, and makes this his

Sentencing Memorandum, and respectfully says:

## TOL USSG

The 2/18/25 revised PSR calculates a TOL of 18 (paragraph "P" 59). With no

criminal history (Cat I), the USSG recommended range is 27-33 months, P105.

On 2/7/25 Dr. Kantwill was evaluated at the Pinellas County Jail Hospital

Wing by Dr. Ronald T. Droz, Psy.D., Clinical Psychologist, PY4376. References to

this report by Dr. Droz will be to "Evaluation", followed by a page number.

## Summary of Dr. Kantwill's Request

"[This 61 year old, happily married[1] dentist] served in the United States Army as a
captain in the first war in Iraq [as a combat field medic and chief combat triage

_____

[1] Dr. Kantwill met his wife, Maria DelPilar Restepo while she interned in the
dental practice, he worked in. She is from Columbia and has three grown children
from her first marriage.  They married on January 12, 2019, and settled in Tampa,
Florida.  He explained, "she knew my issues and has stuck by me." Evaluation,
p.4.

1

field officer]. From this experience he developed depression and post-traumatic stress disorder. He has also struggled with alcoholism. Despite this, he has lived six decades without committing any crimes: he has no criminal history at all." Prior defense counsel's 6/20/24 Memorandum in Support of Pretrial Release, Doc.14.

For the reasons stated below, Dr. Kantwill respectfully moves this Court for a combination of a departure under USSG §5H1.11 for his military service and a variance for his personal history characteristics and impose a sentence of 12 months incarceration. This sentence would place Dr. Kantwill in Zone C of the Sentencing Table where an appropriate sentence would be that of imprisonment that includes a term of supervise release with a condition that substitutes community confinement or home detention provided that at least half of the minimum term is satisfied by imprisonment. Dr. Kantwill has served 8.6 months incarcerated awaiting the 3/4/25 sentencing in this case. He could serve the remaining four months on home detention, followed by a three-year term of supervise release.

## **Mitigation and Downward Adjustment Bases**

Courts ought to impose sentences that "are not greater than necessary" to comply with the need for the sentence imposed (18 USC § 3553(a) and (a)(2)). The Courts when determining the particular sentence to be impose ought to consider the 7 factors and/or policy statements outlined in 18 USC § 3553(a)(1)-(7):

> **(a) Factors To Be Considered in Imposing a Sentence.—**The court shall impose a sentence sufficient, but not greater than necessary, to comply with the purposes set forth in paragraph (2) of this subsection.

The court, in determining the particular sentence to be imposed, shall consider—

(**1**) The nature and circumstances of the offense and the history and characteristics of the defendant;

(**2**) The need for the sentence imposed—

(**A**)to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;

(**B**) to afford adequate deterrence to criminal conduct;

(**C**) to protect the public from further crimes of the defendant; and

(**D**) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;

(**3**) The kinds of sentences available;

(**4**) The kinds of sentence and the sentencing range established for—

(**A**) The applicable category of offense committed by the applicable category of defendant as set forth in the guidelines—

(**i**)issued by the Sentencing Commission pursuant to section 994(a)(1) of title 28, United States Code, subject to any amendments made to such guidelines by act of Congress(regardless of whether such amendments have yet to be incorporated by the Sentencing Commission into amendments issued under section 994(p) of title 28); and

(**ii**) That, except as provided in section 3742(g), are in effect on the date the defendant is sentenced; or

(**B**) In the case of a violation of probation or supervised release, the applicable guidelines or policy statements issued by the Sentencing Commission pursuant to section 994(a)(3) of title 28, United States Code, taking into account any amendments made to such guidelines or policy statements by act of Congress (regardless of whether such amendments have yet to be incorporated by the Sentencing Commission into amendments issued under section 994(p) of title 28);

(**5**) Any pertinent policy statement—

(**A**) Issued by the Sentencing Commission pursuant to section 994(a)(2) of title 28, United States Code, subject to any amendments made to such policy statement by act of Congress(regardless of whether such amendments have yet to be incorporated by the Sentencing Commission into amendments issued under section 994(p) of title 28); and

(**B**) That, except as provided in section 3742(g), is in effect on the date the defendant is sentenced.[1]

(**6**) The need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and

(**7**) The need to provide restitution to any victims of the offense

## Downward departure under USSG §5H1.11 for his military service and a Variance for his personal history characteristics

Dr. Kantwill is a 61-year-old man before the Court for his unlawful online conduct. The abhorrent messages that he sent are not representative of the individual who sent them.

Dr. Kantwill came from a middle-class family in the Midwest where he attended college and earned his Doctorate in Dentistry before joining the military, being directly commissioned as a Captain. He served in Nuremberg, Germany, for two years and then tried to be assigned to a combat unit for the First Armored Division[2]. He was the chief dental officer for the First Armored Division. When the first Iraq Gulf war began, Dr. Kantwill went to Iraq with the First Armored Division.

When he arrived to Iraq, he was called up to serve as a frontline combat field medic and head triage officer. He was assigned to saving wounded lives in the field, and as head triage officer, made the decisions of the order of priority in tending to

---

[2] "As he was a single man he was motivated to increase his rank and was offered an assignment as Chief Dental Officer/ Head Triage Officer of the 1st Armored Division." Evaluation, p.2.

4

the wounded in the field, including attempting to stabilize conditions and having them evacuated out. Dr. Kantwill observed and treated individuals with horrific injuries, as well as young men and women who were killed instantly.[3] The weapons used in the war left the bodies of the wounded and killed in absolutely horrific conditions.

In one instance, a soldier in an armored vehicle has his leg taken off by an enemy shell. Dr. Kantwill immediately tended to his bleeding partial limb and had him evacuated. Dr. Kantwill saved that wounded soldier's life by preventing him from quickly bleeding out of the severed femoral artery.

Dr. Kantwill witnessed an Iraqi torture bunker, where human flesh of the tortured-to-death victims were left in pieces, hanging from metal bed frames/springs, to which batteries were still connected for delivering electrocution torture.

This experience forever impacted Dr. Kantwill and he continues to suffer with the horrors he witnessed in the war, to this day, suffering from severe ptsd, anxiety attacks, nightmares, depression and alcoholism, to include daily blackout drinking. He also sustained injuries to his lungs and ears (tinnitus and hearing loss caused by combat theatre explosions) as a result of his service in the war.

---

[3] "His tour lasted one year where he performed dental fitness examinations and where he performed amputations on the battle field.  He was a person witness to the atrocities of war with soldiers "dying in my arms."" Evaluation, p.3.

5

When he returned from the war to his station in Germany, Dr. Kantwill was thrown into a world of quiet normalcy, directly having arrived from the horrific environment he suffered in the war.[4]

In Dr. Kantwill's generation, men and women suffering from ptsd were expected to "man up", and "deal with it". Neither the military nor the societal environments were conducive to people seeking psychological help, therapy, or let alone, psychotropic medication treatment. Were a soldier to "complain" about emotional or psychological problems or issues, it was known unspoken rule that one's career would be over or they would be pushed out of the military.

To cope with the post-traumatic stress, anxiety, anxiety attacks, depression, difficulty sleeping, nightmares, and inability to readjust to the quiet normalcy of the non-war world, Dr. Kantwill began to self-medicate by drinking alcohol. It was not long before he began drinking heavily on a regular basis. As a result of his heavy drinking, he developed bleeding ulcers, gastro-intestinal issues, and diverticulitis. In order to substitute something for the alcohol which was only aggravating his bleeding ulcers and gastro-intestinal issues, Dr. Kantwill began using marijuana to cope with his PTSD and pain as it had less side effects than his excessive drinking, did not aggravate his bleeding ulcers and gastro-intestinal issues, and helped with

---

[4] "When Dr. Kantwill's tour was over he remembered, "They just sent me back to Germany to resume being a hospital dentist.""

his nausea. Unfortunately, as a result of his marijuana use, then-Captain Kantwill received an "Other than Honorable" Discharge from the Army.

Having been such a patriotic American and having given of himself so heroically in the war, the "other than honorable" discharge from the army became a very emotionally traumatic impact on Dr. Kantwill[5], only aggravating his delicate psychological conditions, including his depression. This was especially true given he had earned a bronze star (a merited honor rarely bestowed on a medical officer). Other honors he received were the National Defense Service, Medal, Army Service Ribbon, Overseas Service, Ribbon, Southwest Asia Service Medal with Bronze Stars, and Kuwaiti Liberation Medal.

After his discharge from the service, Dr. Kantwill immersed himself in work and alcohol to try to forget the events that he witnessed in the war rather than seeking counseling to appropriately cope with his trauma. His chronic pain from multiple physical conditions, combined with alcohol and marijuana use, sent him in a downward spiral of anger and depression. It was in this dark place where Dr. Kantwill began his inappropriate online behavior. While he personally knew that he would never harm another individual, unfortunately, the person at the receiving end

_____

[5] "Dr. Kantwill recalled, "I was planning on making the military a career, I loved serving my country." Devastated by termination from the military he returned to the United States and entered civilian life as a general dentist." <u>Evaluation</u>, p.3.

of his emails did not know that. Dr. Kantwill now recognizes the repercussions of his words and how it caused pain to others. Dr. Kantwill is extremely remorseful of his conduct and having sent the many messages is the biggest mistake of his life, PSR, P25.

Dr. Kantwill has made attempts in the past to address his alcoholism, ptsd, and depression; however, the death of his dear father in 2019 was a devastating emotional blow to Dr. Kantwill.[6]

Dr. Kantwill has never been arrested, nor has he ever been convicted of any crime. He has been a law-abiding, tax-paying citizen his entire life. He has never demonstrated any acts of violence, physical or verbal, to anyone throughout his life. He is an individual who witnessed unspeakable human carnage during his service to the United States, and it unfortunately, forever changed him.

**Departure Under 5H1.11**

In accordance with USSG §5H1.11, "military service may be relevant in determining whether a departure is warranted if the military service, individually or in combination with other offender characteristics is present to an unusual degree and distinguishes the case from typical case is covered by the guidelines."

---

[6] "To this point, he has participated in four substance abuse/mental health inpatient programs beginning in 1994 for three months and ending in a 45- day program in 2019.  He struggled to remain sober for periods of time but suffered a severe relapse in 2019 with the death of his father.  He reported, "I was worse than ever.""
Evaluation, p.3.

When Dr. Kantwill volunteered to become attached to a combat division, he did so as a manner to show his dedication to the army and his military career. His patriotic and heroic service on the front lines in Iraq as a combat field medic and chief triage officer, would result in a negative life-altering experience. As mentioned earlier, Dr. Kantwill was awarded the following medals or ribbons: National Defense Service, Medal, Army Service Ribbon, Overseas Service, Ribbon, Southwest Asia Service Medal with Bronze Stars, and Kuwaiti Liberation Medal. Additionally, according to his DD214, four achievements were cited including, "was directly responsible for the preparation of the battalion tracked and material handling vehicles for deployment to Southeast Asia by rail," assisted in the superb coordination for receipt, banding, and transport of supplies for the largest battalion in the first armored division in support of operation, desert storm by air, land, and sea," "participated and/or supported a 48 hour convoy, moving the battalion's wheeled vehicles to port for shipment to Saudi Arabia, requiring a minimum of 22 hours driving time," and assisted, coordinated and/or conducted necessary, administrative, medical, or personnel actions to prepare and safely deploy over 1000 soldiers to Southwest Asia in support of operation desert storm."

Dr. Kantwill proudly served his country and would have received an honorable discharge, but for his choice to self-medicate with marijuana, substituting for the bleeding ulcer aggravator that is alcohol, for his PTSD rather than seek

9

appropriate help. He put his life on the line to serve his country and could have been injured or killed during his deployment. Ironically, it is this personal sacrifice that Dr. Kantwill made for his country that largely contributed to severe PTSD, depression, anxiety, and alcoholism, which culminated into the commission of these offenses. While Dr. Kantwill recognizes that he is responsible for his own actions, his life has never been the same since his experience during the war.

**Age and Physical Condition**

Dr. Kantwill suffers from degenerative lower lumbar disc disease, scoliosis, and diverticultis. He is 61 years old and needs a major reconstructive surgery on his spinal column, PSR P82. He walks greatly slumped over because he tries to compensate for the great amount of back pain he is in. Often, he requires the use of a wheel chair because of his severe back problems. He is currently taking a host of medications to manage his stomach ulcers, back pain and spasms, high blood pressure, and sleep problems, PSR P82.

**Other Consequences to Dr. Kantwill from his Crimes in this case**

Dr. Kantwill has **lost his dental practice** as a result of his conduct, and he will **likely lose his license** effectively ending his career as a dentist. Dr. Kantwill's conduct has forever damaged his character and reputation in the community and he will continue to feel the negative effects of his actions for the rest of his life.

Dr. Kantwill was arrested on or about 6/18/24 (Doc.18), released to attend Dual Diagnosis Veterans Treatment on or about 1/6/25 (Doc.58), and then recommitted 1/10/25 upon a reconsideration of the 1/6/25 order of release (Doc.64). This means that he spent 203 days in jail (6/18/24-1/6/25), plus 54 days in jail by sentencing day, 3/4/25 (1/10/25-3/4/25). **As of 3/4/25's sentencing, he will have spent 257 days (8.6 months) in custody** in this case.

## Participate in Veterans' Program Monitoring, Mentoring, and Dual Diagnosis Rehabilitating

Dr. Droz has the following mental health impressions of Dr. Kantwill:

"Dr. Kantwill is a 61- year -old, White male who appears his stated age.  He is clean - cut and well-groomed.  He appears very anxious and edgy.  He admits to extreme paranoia and anxiety.  He remarked feeling uncomfortable in crowds.  He became tearful throughout the interview process. He is pleasant and cooperative. He reports moderate depression with crying spells.  He admits to hypervigilance, night terrors and intense anxiety.    He is currently prescribed Trazodone for sleep and various medications for ulcers and hypertension." Evaluation, p.4.

Dr. Droz diagnoses Dr. Kantwill with:

Alcohol Abuse with Intoxication
Post-Traumatic Stress Disorder, Chronic; Evaluation, p.4.

Dr. Droz concludes:

"In my professional opinion and within a reasonable degree of psychological certainty, Dr. Kantwill demonstrates a dual diagnosis of Post Traumatic Stress Disorder and Alcohol Abuse with Intoxication.  A departure from the sentencing guidelines should strongly be considered as he was himself a victim of extreme threat during wartime.  He is in need of dual diagnosis treatment for his psychological injuries which he is motivated to seek." Evaluation, p.5.

The VA in Tampa and a local veteran advocate and 13th Circuit Court Veteran's Court leader and mentor, are ready to accept Dr. Kantwill in their program. The VA and mentor are ready to monitor, mentor, and help rehabilitate, Dr. Kantwill for his Dual Diagnosis: service related ptsd (depression, anxiety, nightmares) and alcohol addiction. D.J. Reyes, M.A., J.D., Col. U.S. Army (retired), has volunteered to mentor this Defendant in such a program designed to monitor, mentor, and help rehabilitate with the wealth of veteran-services in the community. Dr. Kantwill is very amenable to treatment and participation in the program. Col. D.J. Reyes and the veteran services cannot do these things without the Defendant being out of custody. Were the Defendant released from jail, then Col. D.J. Reyes and the veteran services can provide monitoring, mentoring, and help rehabilitating for the Dual Diagnosis; of course additional methods of monitoring and special conditions could be in place for the veteran if he is allowed to be released from jail (i.e. a GPS ankle bracelet, random urine screens, etc.).

The veterans' treatment court program of the 13th Judicial Circuit Court in Tampa, Hillsborough County, is a very strict and demanding program. The veterans are expected to be responsible and participate affirmatively in the program. The program has had great success and has helped countless veterans obtain a holistic approach to getting their lives back on track:

"The Veterans Treatment Court, or VTC, is a hybrid court, blending aspects of the traditional Drug, Criminal, Mental Health, and Diversionary Court processes. Its

primary focus is on the effective identification, treatment, and successful reintegration of every enrolled veteran back into his or her local community. There are currently over 625 VTCs or Veteran dockets found throughout most of the United States. *Here in Tampa and the 13th Judicial Circuit's VTC, the program has received accolades and recognition from the local, state and national levels since its inception in late 2013.* To date, the Program has graduated 1,000 Veterans. *In 2019 Tampa's VTC swelled to over 225 Veteran defendants. One of the key ingredients that directly accounts for Tampa VTC's success (88 – 92% graduation rate) and local county tax cost savings lies within the ranks of its Volunteer Veteran Mentor Program."* Mentors for Hillsborough County Veterans (emphasis in original).

On 1/6/25 Colonel Reyes advised Magistrate Judge Thomas G. Wilson in open court that he believes that Dr. Kantwill will be a good candidate for the program after speaking to Dr. Kantwill and to Dr. Kantwill's wife privately, Doc.58.

**Dr. Kantwill is an older offender (61) for whom studies say recidivism is lower**

*U.S. v. Urbina*, slip op., 2009 WL 565485, *3 (E.D. Wis. Mar. 5, 2009) (considering low risk of recidivism indicated by Defendant's lack of criminal history, positive work history, and strong family ties); *U.S. v. Hamilton*, 323 Fed. Appx. 27, 31 (2d Cir. 2009) ("the district court abused its discretion in not taking into account policy considerations with regard to age recidivism not included in the Guidelines"); *U.S. v. Holt*, 486 F.3d 997, 1004 (7th Cir. 2007) (affirming below guidelines sentence based on defendant's age, which made it unlikely that he would be again involved in a violent crime); *U.S. v. Cabrera*, 567 F. Supp. 271, 279 (D. Mass. 2008) (*granting variance because defendant's "with zero criminal history points are less likely to recidivate than all other offenders");* Simon v. U.S., 361 F. Supp. 2d 35, 48 (E.D.N.Y. 2005) (*basing variance in part on Defendant's age of 50 upon release*

*because recidivism drops substantially with age*); *U.S. v. Nellum*, 2005 WL 300073 at *3 (N.D. Ind. Feb. 3, 2005) (*granting variance to 57 year old defendant because recidivism drops with age*); *U.S. v. Ward*, 814 F. Supp. 23, 24 (E.D. Va. 1993) (*granting departure based on defendant's age as first time offender since guidelines do not "account for the length of time a particular defendant refrains from criminal conduct "before committing his first offense*).

## <u>Appropriate Sentence</u>

The advisory guideline range for Dr. Kantwill is 27-33 months incarceration. He respectfully moves the Court for a combination of a departure under USSG §5H1.11 for his military service and a variance for his personal history characteristics and impose a sentence of 12 months incarceration. This sentence would place Dr. Kantwill in Zone C of the Sentencing Table where an appropriate sentence would be that of imprisonment that includes a term of supervise release with a condition that substitutes community confinement or home detention provided that at least half of the minimum term is satisfied by imprisonment. Dr. Kantwill has served 8.6 months incarcerated awaiting the 3/4/25 sentencing in this case. He could serve the remaining four months on home detention, followed by a three-year term of supervise release.

This sentence would allow Dr. Kantwill the opportunity to immediately enroll in the veterans dual diagnosis program and begin receiving the treatment that he so

desperately needs for his PTSD, depression, and alcoholism. Regardless of the disposition of this case, Dr. Kantwill recognizes that he needs to address these issues in order to move forward with his life.

## Conclusion

Dr. Kantwill acknowledges that he made very poor decisions over an extended period of time that negatively impacted other people. He went on these e-mail threatening and horrible tirades, usually while drunk and suffering from severe ptsd and depression[7]. Dr. Kantwill hopes the Court and Government will recognize his sincere remorse, and that the Court take into consideration his service for his country when fashioning an appropriate sentence.

**WHEREFORE**, Defendant **RICHARD GLENN KANTWILL,** by and through his undersigned counsel, has made this his sentencing memorandum.

---

[7] "Dr. Kantwill continued his severe binge drinking and drug use to self-medicate his emotional trauma as the result of his catastrophic experiences and humiliating discharge from the Army…. During his mourning period, Dr. Kantwill admitted to daily black-out drinking." Evaluation, pp.3-4.

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that a true and accurate copy of the foregoing has

been furnished by Electronic Delivery, on the above-named address this 21st day

of February, 2025.

**Respectfully submitted,**

*|S| Jorge Leon Chalela*

**JORGE LEON CHALELA, ESQ.**
**Jorge Leon Chalela, P.A.**
**of Counsel for Mike G. Law**
P.O. BOX 173407, Tampa, Florida 33672-0407
Office: (813) 221-5600; Cell Phone: (727) 415-4286
**E-Mail: chalelalaw@yahoo.com**
Florida Bar Number: 0073245
Attorney for Defendant (retained), Richard Glenn Kantwill
